# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

```
-------------------------------------------------- x
In re:                                             :   Chapter 11
                                                   :
LONESTAR RESOURCES US INC., et al.,[1]             :   Case No. 20-34805 (DRJ)
                                                   :
              Debtors.                             :   (Jointly Administered)
-------------------------------------------------- x
```

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF ROTHSCHILD & CO US INC. AND INTREPID PARTNERS, LLC AS INVESTMENT BANKERS TO THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE

> **A hearing will be conducted on this matter on November 9, 2020 at 2:00 pm. You may participate in the hearing by audio/video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones' conference room number is 205691.**
>
> **You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeJones" in the GoToMeeting app or click the link on Judge Jones' home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Lonestar Resources US Inc. (4035), Lonestar Resources Intermediate Inc. (2449), LNR America Inc. (3936), Lonestar Resources America Inc. (5863), Amadeus Petroleum Inc. (8763), Albany Services, L.L.C. (3185), T-N-T Engineering, Inc. (0348), Lonestar Resources, Inc. (8204), Lonestar Operating, LLC (5228), Poplar Energy, LLC (5718), Eagleford Gas, LLC (5513), Eagleford Gas 2, LLC (0638), Eagleford Gas 3, LLC (3663), Eagleford Gas 4, LLC (8776), Eagleford Gas 5, LLC (5240), Eagleford Gas 6, LLC (4966), Eagleford Gas 7, LLC (3078), Eagleford Gas 8, LLC (7542), Eagleford Gas 10, LLC (2838), Eagleford Gas 11, LLC (5951), Lonestar BR Disposal LLC (0644), and La Salle Eagle Ford Gathering Line LLC (8877). The Debtors' address is 111 Boland Street, Suite 300, Fort Worth, TX 76107.

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") respectfully state as follows in support of this application (this "**Application**"):

## RELIEF REQUESTED

1.      The Debtors seek entry of an order, substantially in the form attached hereto (the "**Order**"), authorizing the employment and retention of Rothschild & Co US Inc. ("**Rothschild & Co**") and Intrepid Partners, LLC ("**Intrepid**," and, together with Rothschild & Co, collectively, the "**Investment Bankers**") as investment bankers for the Debtors in accordance with the terms and conditions set forth in that certain engagement letter, dated as of April 7, 2020 (the "**Engagement Letter**"), by and among the Debtors and the Investment Bankers, a copy of which is attached as Exhibit 1 to the Order and incorporated by reference herein, effective as of the Petition Date.

2.      In support of this Application, the Debtors submit: (a) the *Declaration of Kevin Glodowski in Support of Debtors' Application for an Order Authorizing the Retention and Employment of Rothschild & Co US Inc. and Intrepid Partners, LLC as Investment Bankers to the Debtors, Effective as of the Petition Date* (the "**Glodowski Declaration**"), attached hereto as Exhibit A; and (b) the *Declaration of R. Adam Miller in Support of Debtors' Application for an Order Authorizing the Retention and Employment of Rothschild & Co US Inc. and Intrepid Partners, LLC as Investment Bankers to the Debtors, Effective as of the Petition Date* (the "**Miller Declaration**"), attached hereto as Exhibit B. The Glodowski Declaration and the Miller Declaration are each incorporated herein by reference. In further support of this Application, the Debtors respectfully represent as follows.

## JURISDICTION AND VENUE

3.      The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court may enter a final order consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief requested herein are sections 327(a), 328(a), and 1107 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**"), and the Procedures for Complex Cases in the Southern District of Texas (the "**Complex Case Procedures**").

## BACKGROUND

6.      On September 30, 2020 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The factual background regarding the Debtors, including their business operations and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of John R. Castellano in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**"), which is fully incorporated herein by reference.

7.      The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested in the Chapter 11 Cases, and no committees have been appointed.

**BASIS FOR RELIEF**

**I.      Qualifications of the Investment Bankers.**

8.      The Debtors require qualified and experienced investment bankers to assist them in pursuing the transaction(s) that are crucial to the success of these Chapter 11 Cases.  The Debtors seek to retain Rothschild & Co and Intrepid as their investment bankers because, among other things, Rothschild & Co has extensive experience and an excellent reputation in providing high quality investment-banking and financial-restructuring services to debtors, their boards of directors, and various secured and unsecured classes of creditors in bankruptcy reorganizations and other restructurings, and Intrepid is a highly regarded boutique investment banking firm with extensive experience specific to the oil and gas industry.  As such, each Investment Banker brings a distinct and complementary perspective and skill set to the Debtors' Chapter 11 Cases that are necessary to maximize recovery to all stakeholders.  Recognizing that these complementary skillsets would be valuable to clients in the oil and gas industry facing financial distress, Rothschild & Co and Intrepid entered into a strategic alliance in 2018 to provide investment banking and financial advisory services to clients in the oil and gas industry, such as the Debtors, that would need to utilize both skillsets offered by Rothschild & Co and Intrepid (the "**Strategic Alliance**").  In addition, as described more fully in this Application, the Glodowski Declaration, and the Miller Declaration, the Investment Bankers have a substantial understanding of the Debtors' business from having jointly advised the Debtors on strategic alternatives since the spring of 2020, and in Intrepid's case having advised the Debtors on various financing and strategic transactions dating back to 2016.

**II.      Rothschild & Co's Qualifications.**

9.      Rothschild & Co is a member of one of the world's leading independent investment banking groups, with more than fifty offices in more than forty countries.  Rothschild

& Co has expertise in domestic and cross-border restructurings, mergers and acquisitions, new capital raises, and other financial-advisory and investment-banking services and experience in providing high-quality advice to financially troubled companies.   Rothschild & Co is an experienced bankruptcy and restructuring advisor to debtors in a variety of industries. Rothschild & Co is highly qualified to advise on strategic alternatives and its professionals have extensive experience in deals involving complex financial and operating restructurings. Moreover, Rothschild & Co is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.

10.     Rothschild & Co and its professionals have extensive experience working with financially troubled companies within a variety of industries in complex financial restructurings, both out of court and in chapter 11 cases.   Rothschild & Co's business reorganization professionals have served as financial and strategic advisors in numerous cases, including, among others: *In re Chesapeake Energy Corp.*, No. 20-33233 (DRJ) (Bankr. S.D. Tex Oct. 9, 2020); *In re Chaparral Energy, Inc.*, No. 20-11947 (MFW) (Bankr. D. Del. Aug. 16, 2020); *In re Cenveo, Inc.*, No. 18-22178 (RDD) (Bankr. S.D.N.Y. Mar. 8, 2018); *In re M & G USA Corp.*, No. 17-12307 (BLS) (Bankr. D. Del. Dec. 1, 2017); *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex. July 13, 2017); *In re rue21, Inc.*, No. 17-22045 (GLT) (Bankr. W.D. Pa. June 28, 2017); *In re Answers Holdings, Inc.*, No. 17-10496 (SMB) (Bankr. S.D.N.Y. Apr. 7, 2017); *In re Ultra Petrol. Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. June 20, 2016); *In re SunEdison, Inc.*, No. 16-10992 (SMB) (Bankr. S.D.N.Y. May 20, 2016); *In re Alpha Nat. Res., Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. Aug. 4, 2015); *In re Allen Sys. Grp., Inc.*, No. 15-10332 (KJC) (Bankr. D. Del. Mar. 19, 2015); *In re GT Advanced Techs., Inc.*, No. 14-11916 (HJB) (Bankr. D.N.H. Oct. 30, 2014); *In re NII Holdings, Inc.*, No. 14-12611 (SCC)

(Bankr. S.D.N.Y. Oct. 22, 2014); *In re Autoseis, Inc. (Glob. Geophysical)*, No. 14-20130 (RSS) (Bankr. S.D. Tex. Apr. 25, 2014); *In re Allied Sys. Holdings, Inc.*, No. 12-11564 (CSS) (Bankr. D. Del. Oct. 16, 2012); *In re AMR Corp.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y. Mar. 2, 2012); *In re Harry & David Holdings, Inc.*, No. 11-10884 (MFW) (Bankr. D. Del. Apr. 27, 2011); *In re Neenah Enters. Inc.*, No. 10-10360 (MFW) (Bankr. D. Del. Mar. 8, 2010); *In re Trident Res. Corp.*, No. 09-13150 (MFW) (Bankr. D. Del. Jan. 28, 2010); *In re Milacron Inc.*, No. 09- 11235 (JVA) (Bankr. S.D. Ohio Apr. 6, 2009); *In re Recycled Paper Greetings Inc.*, No. 09-10002 (KG) (Bankr. D. Del. Jan. 23, 2009); *In re VeraSun Energy Corp.*, No. 08-12606 (BLS) (Bankr. D. Del. Jan. 6, 2009); *In re Nw. Airlines Corp.*, No. 05-17930 (ALG) (Bankr. S.D.N.Y. Sept. 14, 2005); *In re Solutia Inc.*, No. 03-17949 (PCB) (Bankr. S.D.N.Y. May 14, 2004); *In re WestPoint Stevens, Inc.*, No. 03-13532 (RDD) (Bankr. S.D.N.Y. June 3, 2003); *In re UAL Corp.*, No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 9, 2002).[2]

11.     In light of the nature of the Debtors' Chapter 11 Cases, the resources, capabilities, and experience of Rothschild & Co in advising the Debtors as an investment banker are crucial to the success of the Debtors' chapter 11 strategies.  An experienced investment banker, such as Rothschild & Co, fulfills a critical need that complements the services offered by the Debtors' other professionals, including Intrepid.  For these reasons, the Debtors require the services of a capable and experienced investment banker with restructuring experience, such as Rothschild & Co.

---

[2]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application.  Copies of these orders are available upon request to the Debtors' proposed counsel.

### III.    Intrepid's Qualifications.

12.    Intrepid has extensive experience and an excellent reputation in providing high-quality financial-advisory and investment-banking services to companies, investors, and other participants in the energy industry.  Intrepid Financial Partners, L.L.C., the parent company of Intrepid and its affiliates, is an independent, energy-focused merchant bank with offices in New York City and Houston.  Intrepid is a leading provider of financial-advisory services to the energy industry and has a specific focus on the North American oil and gas sector.  Intrepid has broad and deep expertise providing oil and gas clients specialized advice on matters including, but not limited to, restructurings, mergers, acquisitions, capital structure advisory, and capital raises.

13.    As set forth in the Miller Declaration, Intrepid's professionals have extensive experience and an excellent reputation in providing high-quality investment banking services to companies in the oil and gas industry.  Intrepid has served as financial and strategic advisor in reorganization cases, including: *In re Chesapeake Energy Corp.*, No. 20-33233 (DRJ) (Bankr. S.D. Tex Oct. 9, 2020); *In re Chaparral Energy, Inc.*, No. 20-11947 (MFW) (Bankr. D. Del. Aug. 16, 2020); *In re Fieldwood Energy, LLC*, No. 20-33948 (MI) (Bankr. S.D. Tex. Aug. 3, 2020); *In re Rosehill Resources, Inc.*, No. 20-33695 (Bankr. S.D. Tex. July 26, 2020); *In re EXCO Resources, Inc.*, No. 18-30155 (MI) (Bankr. S.D. Tex. Apr. 19, 2018); *In re Emerald Oil, Inc.*, No. 16-10704 (KG) (Bankr. D. Del. Apr. 26, 2016).  Intrepid's professionals have also provided investment banking services in other chapter 11 cases and out-of-court restructurings and recapitalizations, including among others:  EV Energy Partners, LP, Goodrich Petroleum Corp., Halcon Resources Corp., Knight Oil Tools, Linn Energy LLC, Quicksilver Resources Corp., and Stone Energy Corp.  In addition, the senior professionals of Intrepid have advised energy companies like the Debtors on dozens of M&A, strategic advisory and financing

transactions, including among others: Buckeye Partners, L.P., affiliates of CNX Midstream Partners LP, Contango Oil & Gas Company, Elite Compression Services, LLC, Energy XXI Gulf Coast, Inc., EnVen Energy Corporation, Extraction Oil & Gas, Inc., Harvest Oil & Gas Corp, NuStar Energy LP, Sanchez Energy Corporation, and Vitesse Energy, LLC.

14.     In light of the nature of the Debtors' Chapter 11 Cases, the resources, capabilities, and experience of Intrepid in advising the Debtors as an investment banker are crucial to the success of the Debtors' chapter 11 strategies.  Intrepid's specialized expertise in the oil and gas industry fulfills a critical need that complements the services offered by Rothschild & Co (as well as the Debtors' other professionals).

## IV.     Services Provided to the Debtors Prior to the Petition Date.

15.     Since their joint retention in the spring of 2020, the Investment Bankers have provided prepetition services in connection with the Debtors' strategic alternatives process, including: (a) familiarizing themselves with the assets and operations of the Debtors; (b) analyzing the Debtors' liquidity and cash flow projections; (c) examining various potential strategic alternatives; (d) assisting the Debtors in responding to due diligence requests from key creditor constituencies and coordinating such due diligence; (e) negotiating with key creditor constituencies; and (f) providing additional financial-advisory and investment-banking services in preparation for the filing of the Debtors' Chapter 11 Cases.  In providing these and other prepetition professional services to the Debtors, the Investment Bankers have acquired significant knowledge of the Debtors and their businesses and are intimately familiar with the Debtors' financial affairs, debt and capital structure, assets, business operations, key stakeholders, financing documents, and other related material information.  Further, the Investment Bankers have worked closely with the Debtors' senior management and their other advisors and have familiarity with the other major stakeholders that will be involved in these

Chapter 11 Cases.  Accordingly, the Investment Bankers are well-qualified and uniquely able to represent the Debtors in these Chapter 11 Cases in an efficient and timely manner.

16.     Should the Court approve the Debtors' retention of the Investment Bankers, the Investment Bankers will continue, without interruption, to perform the services for the Debtors as described herein.  On the other hand, if the Debtors were required to retain an investment bank other than the Investment Bankers in connection with the Chapter 11 Cases, the Debtors, their estates, and all parties in interest would be unduly prejudiced by the time and expenses necessary to familiarize another professional with the intricacies of the Debtors and their business operations.

17.     Accordingly, the Debtors submit that the retention of the Investment Bankers on the terms and conditions set forth herein (a) is necessary, appropriate, and in the best interests of the Debtors' estates, creditors, and all other parties in interest and (b) should be granted in all respects.

**V.      Services to Be Provided by the Investment Bankers.**

18.     The terms and conditions of the Engagement Letter govern the relationship between the Debtors and Investment Bankers.  The terms of the Engagement Letter were negotiated at arm's length among the Debtors and the Investment Bankers and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.  Under the Engagement Letter, in consideration for the compensation contemplated thereby, the Investment Bankers have provided and have agreed to provide in connection with a Transaction

(as defined in the Engagement Letter) or any series or combination of Transactions, certain services as reasonably requested by the Debtors.[3]

A.      **Investment Bankers Services.**

19.      Pursuant to the Engagement Letter, the Investment Bankers have agreed to provide the following services to the extent reasonably requested by the Debtors:

(a)      identify and/or initiate potential Transactions;

(b)      review and analyze the Debtors' assets and the operating and financial strategies of the Debtors;

(c)      review and analyze the business plans and financial projections prepared by the Debtors including, but not limited to, testing assumptions and comparing those assumptions to historical Debtor and industry trends;

(d)      evaluate the Debtors' debt capacity in light of their projected cash flows and assist in the determination of an appropriate capital structure for the Debtors;

(e)      assist the Debtors and their other professionals in reviewing the terms of any proposed Transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Transaction;

(f)      determine a range of values for the Debtors and any securities that the Debtors offer or propose to offer in connection with a Transaction;

(g)      advise the Debtors on the risks and benefits of considering a Transaction with respect to the Debtors' intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Debtors;

(h)      review and analyze any proposals the Debtors receive from third parties in connection with a Transaction, including, without limitation, any proposals for debtor-in-possession financing, as appropriate;

(i)      assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of

---

[3]      The summaries of the Engagement Letter contained in this Application are provided for purposes of convenience only.  In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control.  Capitalized terms used but not otherwise defined in the summaries of the Engagement Letter contained herein shall have the meanings ascribed to such terms in the Engagement Letter.

equity in, or claimants against the Debtors and/or their respective representatives in connection with a Transaction;

(j)   advise the Debtors with respect to, and attend, meetings of the Debtors' Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

(k)   if requested by the Debtors, participate in hearings before the Court and provide relevant testimony with respect to the matters described in the Engagement Letter and issues arising in connection with any proposed Plan; and

(l)   render such other financial advisory and investment banking services as may be agreed upon by the Investment Bankers and the Debtors.

20.   To the extent the Debtors request the Investment Bankers to perform additional services not contemplated by the Engagement Letter, such services and the fees for such services will be mutually agreed upon by the Investment Bankers and the Debtors, in writing, in advance and subject to Court approval.

**B.    The Unique Nature of the Services Provided by Each Investment Banker.**

21.   The services that the Investment Bankers will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates.  The Debtors believe that each Investment Banker's services will not duplicate the services that other professionals intend to provide to the Debtors in connection with these Chapter 11 Cases.  Rothschild & Co and Intrepid will carry out unique functions and will coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.  Furthermore, all of the services that each Investment Banker provides to the Debtors will be appropriately directed by the Debtors so as to avoid unnecessary duplicative efforts among professionals retained in these Chapter 11 Cases.

22.   Moreover, consistent with the Investment Bankers' Strategic Alliance, the Investment Bankers will work together to provide the best and most efficient services to the

Debtors by offering distinct and complementary expertise.  As described above, Rothschild & Co has significant experience with both in- and out-of-court restructuring transactions, while Intrepid has extensive knowledge and capabilities specific to the oil and gas industry. Accordingly, the Debtors' proposed retention of both Rothschild & Co and Intrepid will enable the Debtors to receive vital, coordinated services from investment banking firms that are leaders in their respective fields under a single fee structure.

**VI.    Professional Compensation.**

23.     In consideration of the services to be provided by the Investment Bankers, and as more fully described in the Engagement Letter, subject to the Court's approval, the Debtors have agreed to pay the Investment Bankers the proposed compensation set forth in the Engagement Letter (the "**Fee and Expense Structure**").  Rothschild & Co and Intrepid have agreed that all fees payable to the Investment Bankers approved by the Court and paid pursuant to the Engagement Letter shall be paid 50.0% to Rothschild & Co and 50.0% to Intrepid.  The Fee and Expense Structure contemplates that the Investment bankers will be jointly entitled to the following fees:

(a)     **Monthly Fee:**  $150,000 per month.

(b)     **Completion Fee:**  $5,000,000 payable upon the earlier of:

(i)     the confirmation and effectiveness of a Plan; and

(ii)    the closing of a Transaction.

(c)     **New Capital Fee:**

(i)     1.0% of the face amount of any senior secured debt raised (including, without limitation, any debtor-in-possession financing raised);

(ii)    2.0% of the face amount of any junior secured or senior or subordinated unsecured debt raised; and

     (iii)     3.0% of any equity capital, capital convertible into equity or hybrid capital raised, including, without limitation, equity underlying any warrants, purchase rights or similar contingent equity securities.[4]

The New Capital Fee shall be payable upon the closing of the transaction by which the new capital is committed.  For the avoidance of doubt, the term "raised" shall include the amount committed or otherwise made available to the Debtors whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Debtors.  For the further avoidance of doubt, the New Capital Fee relating to any warrants, purchase rights or similar contingent equity securities shall be due and payable upon the closing of the transaction by which such instruments are issued and shall be calculated as if all such instruments are exercised in full (and the full cash exercise price is paid) on the date of such closing, whether or not all or any portion of such instruments are vested and whether or not such instruments are actually so exercised.

(d)     **Credit:**  The Investment Bankers shall credit against the Completion Fee:

     (i)     50.0% of the Monthly Fees paid in excess of $600,000 (the "**Monthly Fee Credit**"); and

     (ii)     50.0% of any New Capital Fees paid (the "**New Capital Fee Credit**");

     provided, that the sum of the Monthly Fee Credit and New Capital Fee Credit shall not exceed the Completion Fee.

(e)     **Expenses:**  The Debtors shall reimburse the Investment Bankers for their reasonable and documented out-of-pocket expenses incurred in connection with the performance under the Engagement Letter and the enforcement thereof, including, without limitation, the reasonable fees, disbursements, and other charges of the Investment Bankers' counsel (without the requirement that the retention of such counsel be approved by the Court).  Reasonable expenses shall include, but not be limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, research, and courier services.

---

[4]    As set forth in the Engagement Letter, no New Capital Fee shall be earned by the Investment Bankers pursuant to this clause (c)(iii) to the extent such new capital is raised from any of the following entities or their respective subsidiaries or affiliates (excluding any of their respective limited partners): Chambers Energy Capital, Lone Star Group, Hudson Advisors, Mountain Capital, Elbe Financial, Karlin Asset Management and/or Ecofin, Ltd.

**VII.    The Fee and Expense Structure Is Appropriate and Reasonable.**

24.    The Fee and Expense Structure is the result of arm's-length negotiations between and among the Debtors and the Investment Bankers in which there was substantial dialogue and compromise.  The Debtors ultimately agreed to the Fee and Expense Structure because it is reasonable and market-based and because the Debtors require the services that the Investment Bankers will provide.  The Fee and Expense Structure also reflects the scope of the extensive mandate that each Investment Banker expects to undertake in connection with these Chapter 11 Cases and accounts for the potential for an unfavorable outcome resulting from factors outside of each Investment Banker's control.

25.    The Investment Bankers' respective oil and gas industry, strategic, and financial expertise, as well as their significant capital-markets knowledge, financing skills, restructuring capabilities, and mergers-and-acquisitions expertise—some or all of which may be required by the Debtors during the term of Investment Bankers' engagement hereunder—were important factors in determining the Fee and Expense Structure.  Furthermore, the ultimate benefit to the Debtors of the Investment Bankers' services hereunder cannot be measured by reference to the number of hours to be expended by the Investment Bankers' professionals in the performance of such services.

26.    The Debtors submit that the Investment Bankers have obtained valuable institutional knowledge of the Debtors' businesses and financial affairs as a result of providing services to the Debtors prior to the Petition Date and that the Investment Bankers are both well-qualified and uniquely positioned to perform these services and assist the Debtors in these Chapter 11 Cases.  Moreover, the Debtors believe that the Investment Bankers' services will assist the Debtors in achieving a successful outcome with respect to these Chapter 11 Cases, for the benefit of all stakeholders.

27.     The Debtors and the Investment Bankers believe that the compensation for Rothschild & Co and Intrepid under the Engagement Letter on an aggregate basis is comparable to compensation generally charged by investment bankers of similar stature to Rothschild & Co and Intrepid for comparable engagements, both in and out of bankruptcy proceedings.  Further, the Fee and Expense Structure reflects a balance between a fixed, monthly fee and a contingency amount, tied to the consummation and closing of the transactions and services contemplated by the Debtors and the Investment Bankers in the Engagement Letter.  Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by the Investment Bankers and other investment banks in connection with the rendering of comparable services to clients such as the Debtors.

28.     In addition, the Fee and Expense Structure was agreed upon by the parties in anticipation that a substantial commitment of professional time and effort would be required of the Investment Bankers and their professionals in connection with these Chapter 11 Cases, that such commitment may foreclose other opportunities for the Investment Bankers, and that the actual time and commitment required of the Investment Bankers and their professionals to perform their services pursuant to the Engagement Letter may vary substantially from week to week and month to month during the pendency of these Chapter 11 Cases.

29.     The Debtors and the Investment Bankers negotiated the Fee and Expense Structure to function as an interrelated, integrated unit, in correspondence with the Investment Bankers' services, which each Investment Banker renders not in parts, but as a whole. It would be contrary to the intention of the Investment Bankers and the Debtors for any isolated component of the entire Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of the Investment Bankers' services.

30.     To induce the Investment Bankers to represent the Debtors, the Fee and Expense Structure was negotiated to (a) reflect the difficulty of the extensive assignments the Investment Bankers have undertaken and expect to undertake and (b) account for the potential for an unfavorable outcome resulting from factors outside of the Investment Bankers' control.

31.     Accordingly, as more fully described below, the Debtors believe that the Court should approve the Investment Bankers' retention subject to the standard of review set forth in section 328(a) of the Bankruptcy Code and that the Investment Bankers' compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code. As set forth in the Glodowski Declaration and the Miller Declaration, neither Investment Banker has shared or agreed to share any of its respective compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

**VIII.  Record Keeping and Applications for Compensation.**

32.     It is not the general practice of investment banking firms—including the Investment Bankers—to keep detailed time records similar to those customarily kept by attorneys. The Investment Bankers do not ordinarily maintain contemporaneous time records in tenth-hour increments or provide or conform to a schedule of hourly rates for their professionals. Moreover, in light of the nature of these Chapter 11 Cases and the proposed payment in full of all general unsecured creditors pursuant to the Restructuring Support Agreement, the Debtors do not believe that it is necessary for the Investment Bankers to maintaining time records in one-tenth of an hour increments. The Debtors, therefore, respectfully request on behalf of the Investments Bankers a waiver of such requirement under any interim compensation order or U.S. Trustee Guidelines.

33.     Each Investment Banker will file its own fee applications for its respective fees and expenses and, in connection therewith, will also maintain detailed records of any actual and

necessary costs and expenses incurred in connection with the aforementioned services in accordance with their past practice.  The Investment Bankers will present such records to the Court in their fee applications. The Investment Bankers' applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter, in accordance with any applicable procedures established by the Court.  This Court and other bankruptcy courts have approved relief similar to the relief requested in this Application. *See, e.g., In re California Resources Corp.*, No. 20-33568 (DRJ) (Bankr. S.D. Tex. Aug 18, 2020) (Docket No. 351) (order granting Perella Weinberg Partners LP waiver of detailed time records); *In re Rex Energy Corporation*, No. 18-22032 (JAD) (Bankr. W.D. Pa. June 26, 2018) (Docket No. 328) (same); *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex. July 13, 2017) (Docket No.209) (order authorizing the retention of Rothschild & Co providing that Rothschild & Co shall "not be required to keep time records except in accordance with its normal firm policies.").

### IX.    Payments to the Investment Bankers Prior to the Petition Date.

34.    In connection with the Engagement Letter, the Debtors are required to pay the Investment Bankers certain monthly and other fees and to reimburse certain expenses.  As of the Petition Date, the Debtors did not owe either Rothschild & Co or Intrepid for any fees or expenses incurred prior to the Petition Date.

### A.    Payments to Rothschild & Co Prior to the Petition Date.

35.    During the 90 days immediately preceding the Petition Date, Rothschild & Co received the following payments in connection with its engagement under the Engagement Letter:  (a) fee payments totaling $225,000.000 and (b) expense-reimbursement payments totaling $208.61.   The Debtors also paid Rothschild & Co $20,000.00 to apply towards Rothschild & Co and Intrepid's anticipated prepetition expenses that had been incurred but not

yet invoiced or otherwise processed as of the Petition Date.  Other than as set forth herein, Rothschild & Co did not receive any payments from the Debtors during the 90 days immediately preceding the Petition Date.

36.     Within one year prior to the Petition Date, the Debtors paid Rothschild & Co $435,000.00 in fees and $20,208.61 in expense reimbursements.

      **B.**    **Payments to Intrepid Prior to the Petition Date.**

37.     During the 90 days immediately preceding the Petition Date, Intrepid received fee payments in connection with its engagement under the Engagement Letter totaling $225,000.00. Other than as set forth herein, Intrepid did not receive any payments from the Debtors during the 90 days immediately preceding the Petition Date.

38.     Within one year prior to the Petition Date, the Debtors paid Intrepid $435,000.00 in fees and $193.20 in expense reimbursements.

**X.**    **Indemnification Provisions.**

39.     Pursuant to <u>Exhibit A</u> to the Engagement Letter, the Debtors have agreed, among other things, to indemnify, hold harmless, and provide contribution and reimbursement to the Investment Bankers and their affiliates, counsel, and other professional advisors and the respective directors, officers, controlling persons, agents, and employees of each of the foregoing under certain circumstances.  More specifically, <u>Exhibit A</u> to the Engagement Letter provides that the Debtors will indemnify and hold harmless the Investment Bankers and each Indemnified Party (as defined in the Engagement Letter) from and against any losses, claims, or proceedings, directly or indirectly related to or arising out of the Investment Bankers' engagement, ***except*** to the extent that any such loss, claim, damage, liability, or expense is finally judicially determined

to have resulted primarily from such Indemnified Party's gross negligence, willful misconduct, or fraud.[5]

40.     The Debtors and the Investment Bankers believe that the indemnification provisions contained in Exhibit A to the Engagement Letter are customary and reasonable for investment banking engagements, are substantially similar to the Investment Bankers' standard indemnification arrangements outside of chapter 11 engagements, and, as modified by the proposed Order attached hereto, reflect the qualifications and limitations on indemnification provisions that are standard and customary in this district and other jurisdictions.  *See, e.g.*, *In re Sheridan Holding Company I, LLC*, No. 21-31884 (Bankr. S.D. Tex. Mar. 24, 2020); *In re McDermott Int'l, Inc.*, No. 20-30336 (DRJ) (Bankr. S.D. Tex. Mar. 9, 2020); *In re Alta Mesa Resources, Inc.*, No. 19-35133 (Bankr. S.D. Tex. Mar. 2, 2020).

41.     The terms and conditions of the Engagement Letter were negotiated by the Debtors and the Investment Bankers at arm's length and in good faith.  The Debtors respectfully submit that the indemnification, contribution, exculpation, reimbursement, and other provisions contained in Exhibit A to the Engagement Letter, viewed in conjunction with the other terms of the Investment Bankers' proposed retention, are reasonable and in the best interests of the Debtors and their estates and creditors in light of the fact that the Debtors require the Investment Bankers' services to successfully reorganize.  Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification provisions set forth in the Engagement Letter, as modified by the proposed Order attached to this Application.

---

[5]     To the extent that the description in this Application and the terms of Exhibit A to the Engagement Letter are inconsistent, the terms of Exhibit A to the Engagement Letter shall control, subject to and as modified by the proposed Order attached to this Application.

**RELEVANT AUTHORITY**

42.     The Debtors seek authority to employ and retain Rothschild & Co and Intrepid as their investment bankers under section 327(a) of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out the [Debtors'] duties under this title."  11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."  11 U.S.C. § 1107(b).

43.     In addition, the Debtors seek approval of the Engagement Letter (including, without limitation, the Fee and Expense Structure and the indemnification provisions in Exhibit A attached thereto) pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ."  Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors and investment bankers, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was

> worth after it had been done.  That uncertainty continues under the
> present § 330 of the Bankruptcy Code, which provides that the
> court award to professional consultants "reasonable compensation"
> based on relevant factors of time and comparable costs, etc.  Under
> present § 328 the professional may avoid that uncertainty by
> obtaining court approval of compensation agreed to with the
> trustee (or debtor or committee).

*Id.* at 862 (citations omitted), cited in *Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC)*, 383 B.R. 869, 874 (S.D.N.Y. 2008).  Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code. *See, e.g.*, *In re U.S. Airways, Inc.*, No. 02-83984 (SJM) (Bankr. E.D. Va. Aug. 12, 2002); *see also In re J.L. French Auto. Castings, Inc.*, No. 06-10119 (MFW) (Bankr. D. Del. Mar. 24, 2006).

44.     Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, § 417, 119 Stat. 23, 108 (2005), amended section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this
> title, with the court's approval, may employ or authorize the
> employment of a professional person under section 327 or 1103 of
> this title, as the case may be, on any reasonable terms and
> conditions of employment, including on a retainer, on an hourly
> basis, <u>on a fixed or percentage fee basis</u>, or on a contingent fee
> basis.

11 U.S.C. § 328(a) (amendment emphasized).  This amendment makes clear that the Debtors can retain a professional on a fixed or percentage fee basis, such as the Fee and Expense Structure, with Court approval.

45.     The Engagement Letter appropriately reflects (a) the nature and scope of services to be provided by the Investment Bankers, (b) the Investment Bankers' substantial experience with respect to investment banking services, and (c) the fee structures typically utilized by the

Investment Bankers and other leading investment bankers that do not bill their clients on an hourly basis.

46.     Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases.  *See, e.g.*, *In re Sheridan Holding Company I, LLC*, No. 21-31884 (Bankr. S.D. Tex. Mar. 24, 2020); *In re McDermott Int'l, Inc.*, No. 20-30336 (DRJ) (Bankr. S.D. Tex. Mar. 9, 2020); *In re Alta Mesa Resources, Inc.*, No. 19-35133 (Bankr. S.D. Tex. Mar. 2, 2020).  Accordingly, the Debtors believe that the Investment Bankers' retention on the terms and conditions proposed herein is appropriate.

## THE INVESTMENT BANKERS' DISINTERESTEDNESS

47.     To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Glodowski Declaration and the Miller Declaration:  (a) each Investment Banker is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and does not hold or represent an interest materially adverse to the Debtors' estates; and (b) neither Investment Banker has any connection to the Debtors, their creditors or other parties in interest in these Chapter 11 Cases.

48.     As set forth in further detail in each of the Glodowski Declaration and the Miller Declaration, the Investment Bankers have certain connections with creditors and other parties in interest in these Chapter 11 Cases.  All of these matters, however, are unrelated to these Chapter 11 Cases.  The Debtors (based on the Glodowski Declaration and the Miller Declaration) and the Investment Bankers do not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these Chapter 11 Cases.

49.     To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of the Investment Bankers' retention are discovered or arise,

Rothschild & Co and Intrepid will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

**NOTICE**

50.     Notice of this Application will be given to: (i) the United States Trustee for the Southern District of Texas; (ii) the parties included on the Debtors' consolidated list of the holders of the 30 largest unsecured claims against the Debtors; (iii) Linklaters LLP as counsel to the agent for the Debtors' prepetition secured reserve-based revolving credit facility; (iv) UMB Bank, N.A. as indenture trustee for the Debtors' prepetition notes; (v) Strook & Strook & Lavan LLP as counsel to that certain ad hoc group of holders of prepetition notes; (vi) the United States Attorney's Office for the Southern District of Texas; (vii) the Internal Revenue Service; (viii) the Securities and Exchange Commission; (ix) the state attorneys general for states in which the Debtors conduct business; and (x) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is required or needed under the circumstances.

51.     A copy of this Application is available on (i) the Court's website: www.txs.uscourts.gov, and (ii) the website maintained by the Debtors' proposed Claims and Noticing Agent, Prime Clerk LLC, at cases.primeclerk.com/lonestar.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  October 13, 2020                                   /s/ *Frank D. Bracken, III*
Fort Worth, Texas                                          Frank D. Bracken, III
                                                           Lonestar Resources US Inc.
                                                           Chief Executive Officer

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 13, 2020, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

*/s/ Tad Davidson II*
Timothy A. ("Tad") Davidson II