

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
11/08/2020

------------------------------------------------------------ x

In re:          : Chapter 11
              :
LONESTAR RESOURCES US INC., *et al.*,[1] : Case No. 20-34805 (DRJ)
              :
    Debtors.      : (Jointly Administered)

------------------------------------------------------------ x

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105,**
**361, 362, 363 AND 507, BANKRUPTCY RULES 2002, 4001, 6003, 6004**
**AND 9014 AND BANKRUPTCY LOCAL RULE 4001-1, INTER ALIA,**
**(I) AUTHORIZING DEBTORS' LIMITED USE OF CASH COLLATERAL,**
**(II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED**
**PARTIES, (III) MODIFYING THE AUTOMATIC STAY, AND**
**(IV) GRANTING RELATED RELIEF**
(Docket Nos. 26 and 183)

Upon the motion [Docket No. 26] (the "**Motion**"),[2] dated September 30, 2020 (the

"**Petition Date**"), of Lonestar Resources America Inc. ("**Lonestar**") and its debtor affiliates, as

debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11

cases (collectively, these "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363 and 507

of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004,

and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule

4001-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Lonestar Resources US Inc. (4035), Lonestar Resources Intermediate Inc. (2449), LNR America Inc. (3936), Lonestar Resources America Inc. (5863), Amadeus Petroleum Inc. (8763), Albany Services, L.L.C. (3185), T-N-T Engineering, Inc. (0348), Lonestar Resources, Inc. (8204), Lonestar Operating, LLC (5228), Poplar Energy, LLC (5718), Eagleford Gas, LLC (5513), Eagleford Gas 2, LLC (0638), Eagleford Gas 3, LLC (3663), Eagleford Gas 4, LLC (8776), Eagleford Gas 5, LLC (5240), Eagleford Gas 6, LLC (4966), Eagleford Gas 7, LLC (3078), Eagleford Gas 8, LLC (7542), Eagleford Gas 10, LLC (2838), Eagleford Gas 11, LLC (5951), Lonestar BR Disposal LLC (0644), and La Salle Eagle Ford Gathering Line LLC (8877).  The Debtors' address is 111 Boland Street, Suite 300, Fort Worth, TX 76107.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

**Rules**"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the

"**Complex Case Procedures**") promulgated by the United States Bankruptcy Court for the

Southern District of Texas (the "**Court**"), seeking, among other things:

i. authorization for the Debtors, pursuant to Bankruptcy Code sections 105, 361, 362, 363 and 507 to (a) use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("**Cash Collateral**"), and all other Prepetition Collateral (as defined herein), solely in accordance with the terms of the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 507, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014 and Bankruptcy Local Rule 4001-1, Inter Alia, (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 82] (the "**Interim Order**") and this final order (this "**Final Order**"), and (b) provide adequate protection to Citibank, N.A., as administrative agent (the "**Prepetition Agent**") under the Prepetition Credit Agreement (as defined herein), and the other Prepetition Secured Parties (as defined herein);

ii. subject to entry of this Final Order, authorization to grant adequate protection liens on the proceeds and property recovered in respect of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under Bankruptcy Code sections 544, 545, 547, 548, 549 and 550 or any other similar state or federal law (collectively, the "**Avoidance Actions**");

iii. modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and this Final Order;

iv. subject to entry of this Final Order, except to the extent of the Carve Out (as defined herein), the waiver of all rights to surcharge any Prepetition Collateral or Collateral (as defined herein) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

v. that the Court hold an interim hearing (the "**Interim Hearing**") to consider the relief sought in the Motion and entry of the Interim Order;

vi. that the Court schedule a final hearing (the "**Final Hearing**") to consider entry of this Final Order and granting the relief requested in the Motion on a final basis; and

vii. waiver of any applicable stay with respect to the effectiveness and enforceability of the Interim Order or this Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

viii. granting related relief;

and the Interim Hearing having been held by the Court on October 1, 2020; and the Court having

entered the Interim Order on October 1, 2020; and the Court having considered the Motion and

the *Declaration of John R. Castellano in Support of Chapter 11 Petitions and First Day Pleadings*

[Docket No. 8]; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334

and the *Order of Reference to Bankruptcy Judges from the United States District Court for the*

*Southern District of Texas*, dated May 24, 2012; and the Court having found that consideration of

the Motion and the requested relief is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the

Court having found that venue of this proceeding and the Motion in this district is proper pursuant

to 28 U.S.C. §§ 1408 and 1409; and the Court having found that notice of the Motion, the relief

requested therein, the entry of the Interim Order, and the Final Hearing having been given by the

Debtors to the Prepetition Agent, the Prepetition Secured Parties, counsel to the Prepetition Agent,

counsel to the Ad Hoc Noteholders Group, the Indenture Trustee, the Debtors' thirty (30) largest

unsecured creditors (on a consolidated basis), the United States Trustee for the Southern District

of Texas (the "**U.S. Trustee**"), the United States Securities and Exchange Commission, the United

States Internal Revenue Service, and otherwise as set forth in the Motion was appropriate under

the circumstances and no other or further notice need be provided; and the Court having reviewed

the Motion, considered the Budget (as defined herein), and heard the statements in support of the

relief requested therein at the Interim Hearing and the Final Hearing; and all objections, if any, to

the Motion having been withdrawn, resolved or overruled; and the Court having found that the

relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and

other parties in interest; and the Court having determined that the legal and factual bases set forth

in the Motion and at the Interim Hearing and the Final Hearing establish just cause for the relief

granted herein; and after due deliberation and good and sufficient cause having been shown to grant the relief sought in the Motion,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     **Petition Date**.  On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

B.     **Prepetition Credit Agreement**.  Prior to the Petition Date, the Prepetition Secured Parties made certain loans and other financial accommodations pursuant to and in accordance with the terms and conditions of that certain Credit Agreement, dated as of July 28, 2015 (as heretofore amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Prepetition Credit Agreement**," and together with all other documentation executed in connection therewith, including the Guaranty Agreement (as defined below), the Prepetition Collateral Documents (as defined herein) and the other Loan Documents (as defined in the Prepetition Credit Agreement), the "**Prepetition Loan Documents**"), among, *inter alia*, Lonestar, as borrower, the Prepetition Agent, and the lenders from time to time party thereto (such lenders, the "**Prepetition Secured Lenders**," and together with the Prepetition Agent, each "Issuing Bank", each "Treasury Management Party" that is party to any "Secured Treasury Management Agreement," each "Swap Lender" that is party to any "Secured Swap Agreement", and each "Indemnitee" (each as defined in the Prepetition Credit Agreement), collectively, the "**Prepetition Secured Parties**").  Pursuant to that certain Unconditional Guaranty, dated as of July 28, 2015 (as amended, restated, amended and restated, modified (by

joiner thereto or otherwise) or otherwise supplemented from time to time, the "**Guaranty Agreement**"), the Guarantor Debtors[3] guaranteed the Obligations as defined in and under the Prepetition Credit Agreement and the other Prepetition Loan Documents.

      C.    **Debtors' Admissions and Stipulations With Respect to the Prepetition Indebtedness**.  Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described in paragraph 18), the Debtors admit, stipulate, acknowledge and agree that:

    i.    As of the Petition Date, the Debtors were justly and lawfully indebted and liable, without defense, counterclaim, or offset of any kind, to the (a) Prepetition Secured Lenders in the aggregate principal amount of not less than $285,000,000 in respect of loans and other financial accommodations made pursuant to, and in accordance with, the Prepetition Loan Documents, (b) Issuing Banks in respect of issued letters of credit in the aggregate amount of not less than $397,634, (c) Treasury Management Parties party to any Secured Treasury Management Agreements in amounts yet to be determined, and (d) Indemnitees in amounts yet to be determined, in each case, plus accrued and unpaid interest, fees, costs, expenses and other obligations, including, without limitation, attorney's fees, agent's fees, other professional fees and disbursements and all other obligations owing under the Prepetition Loan Documents (collectively, the "**Prepetition Indebtedness**"). Each of the Prepetition Loan Documents is valid, binding, and, subject to applicable bankruptcy law, enforceable against the Debtors in accordance with its terms.

    ii.    The Prepetition Indebtedness constitutes the legal, valid and binding obligations of the Debtors, enforceable, subject to applicable bankruptcy law, in accordance with their terms, and no portion of the Prepetition Indebtedness or any amounts paid to the Prepetition Secured Parties or applied to the obligations owing under the Prepetition Loan Documents prior to the Petition Date is subject to avoidance, subordination (whether equitable or otherwise), recharacterization, recovery, attack, offset, contest, objection, recoupment, reclassification, reduction, disallowance, counterclaim, defense, challenge or Claim (as defined in section 101(5) of the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or

---

[3]    "**Guarantor Debtors**" means each of the Debtors other than Lonestar Resources US Inc., Lonestar Resources Intermediary Inc., LNR Americas Inc., and Boland Building, LLC.

applicable non-bankruptcy law, and the Debtors do not have any claims, counterclaims, causes of action, defenses or setoff rights related to the Prepetition Loan Documents, whether arising under the Bankruptcy Code or applicable non-bankruptcy law, on or prior to the date hereof, against the Prepetition Agent, any of the other Prepetition Secured Parties, or their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys, and advisors.

D.     **Debtors' Admissions and Stipulations With Respect to Prepetition Collateral and Liens**.  Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described in paragraph 18), the Debtors admit, stipulate, acknowledge and agree that:

i.     Pursuant to (a) that certain Security Agreement, dated as of July 28, 2015 (as heretofore amended, restated, supplemented, or otherwise modified (including by joinder thereto) from time to time) by Lonestar in favor of the Prepetition Agent for the benefit of the Prepetition Secured Parties, (b) that certain Security Agreement, dated as of July 28, 2015 (as heretofore amended, restated, supplemented, or otherwise modified (including by joinder thereto) from time to time) by the Guarantor Debtors in favor of the Prepetition Agent for the benefit of the Prepetition Secured Parties, and (c) certain Security Instruments (as defined in the Prepetition Credit Agreement), mortgages, deeds of trust, assignments of as-extracted collateral, security agreements, uncertificated securities control agreements, fixture filings and financing statements, deposit account control agreements and similar security documents entered into by any Loan Party (as defined in the Prepetition Credit Agreement) and the Prepetition Agent in respect of substantially all of the real and personal property owned by such Loan Party (each of (a), (b) and (c) as heretofore amended, restated, supplemented, or otherwise modified from time to time, and, collectively with any and all other agreements, instruments, certificates, transmitting utility filings, consents, assignments or other similar documents, the "**Prepetition Collateral Documents**"), the Debtors granted, and the Prepetition Agent possesses, for the benefit of the Prepetition Secured Parties, valid, binding, perfected and enforceable first priority liens on, and security interests in, substantially all of the real and personal property of Lonestar and the other Loan Parties, all as more fully described in the Prepetition Collateral Documents, including, without limitation, all accounts, chattel paper, cash or cash equivalents, deposit accounts, securities accounts, commodity accounts, and other investment accounts, documents, equipment,

equity interests, farm products, financial assets, fixtures, general intangibles (including, without limitation, rights in and under any contracts, including interest rate hedging agreements, commodity hedging agreements and similar agreements), patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, goods, instruments, inventory, investment property, letters of credit, letter of credit rights and supporting obligations, accounts receivable, other rights to payment, payment intangibles, oil, gas, and other hydrocarbons, as-extracted collateral and products and substances derived therefrom (including all raw materials and work-in-process, finished goods, and materials used or consumed in the manufacture or production thereof), owned real estate, real property leaseholds, oil and gas leases, claims and causes of action and any other real or personal property of the Debtors, and, in each case, the cash and noncash proceeds, products, offspring, rents, profits, insurance proceeds, and other rights arising therefrom (collectively, including Cash Collateral (including the Hedge Monetization Proceeds in the Hedge Proceeds Account) and the setoff rights described in the Prepetition Loan Documents, the Secured Treasury Management Agreements, or arising by operation of law, collectively, the "**Prepetition Collateral**") to secure the Prepetition Indebtedness.  As of the Petition Date, there were no security interests or liens on the Prepetition Collateral other than as permitted by the Prepetition Loan Documents.

ii.    The Prepetition Agent's first priority liens on, and security interests in, the Prepetition Collateral, for the ratable benefit of the Prepetition Secured Parties, are not subject to avoidance, subordination (whether equitable or otherwise), recharacterization, recovery, attack, offset, contest, objection, recoupment, reclassification, reduction, disallowance, counterclaim, defense, challenge or Claim (as defined in section 101(5) of the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

E.    **Debtors' Admissions and Stipulations With Respect to Cash Collateral**.

Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described in paragraph 18), the Debtors admit, stipulate, acknowledge and agree that (i) all cash, including all cash proceeds, products, offspring, rents and profits of the Prepetition Collateral held in any of the Debtors' banking, checking or other deposit accounts with financial institutions (in each case, other than payroll, trust, escrow and custodial funds held as of the Petition Date in

properly established trust, escrow and custodial accounts) as of the Petition Date or deposited into the Debtors' banking, checking or other deposit accounts with financial institutions after the Petition Date (including deposits into accounts opened before or after the Petition Date), are Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code. The Prepetition Secured Parties are entitled, pursuant to sections 105, 361, 362 and 363(e) of the Bankruptcy Code, to adequate protection of their interest in the Prepetition Collateral, including Cash Collateral, for any Collateral Diminution (as defined herein).

F.    **Releases**. Without prejudice to the rights of any other party (but subject to the limitations thereon described in paragraph 18), each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its past, present and future predecessors, successors, heirs, subsidiaries, and assigns, hereby, to the maximum extent permitted by applicable law, unconditionally, irrevocably and fully, forever waives and releases the Prepetition Agent and each of the other Prepetition Secured Parties and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accounts, attorneys, affiliates, and predecessors in interest of any and all Claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights that exist on the date hereof relating to any of the Prepetition Collateral and any of the Prepetition Loan Documents or the transactions contemplated under such documents, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, arising at law or in equity, including, without limitation, any so-called "lender liability," recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law and

any and all claims and causes of action regarding the amount, validity, priority, perfection or avoidability of the liens and claims of the Prepetition Agent and the other Prepetition Secured Parties. Subject to paragraph 18 hereof, the Debtors' acknowledgements, stipulations, and releases shall be binding on the Debtors and their respective representatives, successors and assigns, and, on each of the Debtors' estates, all creditors thereof and each of the respective representatives, successors and assigns, including, without limitation, any trustee or other representative appointed in these Chapter 11 Cases, whether any such trustee or representative is appointed in a case under chapter 7 or chapter 11 of the Bankruptcy Code.

G. **Need to Use Cash Collateral**.  The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rules 4001, 6003, 6004 and 9014, Bankruptcy Local Rule 4001-1, and the Complex Case Procedures and have a need to continue to use Cash Collateral (in the amount and in the manner set forth in the Budget (subject to Permitted Deviations, each as defined herein)) in order to, among other things, preserve and maintain the value of their assets and businesses and maximize the return to all creditors.  The Debtors need to use Cash Collateral, consistent with the Budget (subject to Permitted Deviations), for working capital purposes, investment and maintenance in the Proved Developed Producing Reserves (as defined in the Prepetition Credit Agreement) of the Debtors as of the Petition Date, maintenance of proved undeveloped reserves in the Oil and Gas Properties (as defined in the Prepetition Credit Agreement), other general corporate purposes of the Debtors, and the satisfaction of costs and expenses of administering these Chapter 11 Cases.  The terms of the use of the Prepetition Collateral pursuant to this Final Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment and constitute reasonably equivalent value and fair consideration.  The Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the

Bankruptcy Code as an administrative expense.  The ability of the Debtors to obtain liquidity through the use of Cash Collateral is vital to the Debtors and their efforts to maximize the value of their assets

H.  **Notice**.  Notice of the requested relief sought at the Final Hearing was provided by the Debtors to: (i) the Prepetition Agent; (ii) the Prepetition Secured Parties; (iii) counsel to the Prepetition Agent; (iv) counsel to the Ad Hoc Noteholders Group; (v) the Indenture Trustee; (vi) the Debtors' thirty (30) largest unsecured creditors (on a consolidated basis); (vii) the U.S. Trustee; (viii) the United States Securities and Exchange Commission; (ix) the United States Internal Revenue Service; and (x) otherwise as set forth in the Motion.  Given the nature of the relief sought, the foregoing notice of the Final Hearing was, in the Debtors' good-faith belief, the best available under the circumstances and complies with Bankruptcy Rules 2002, 4001(b) and (d) and 9014, Bankruptcy Local Rule 4001-1, the Complex Case Procedures, and section 102(1) of the Bankruptcy Code as required by sections 361 and 363 of the Bankruptcy Code.  No further notice of, or hearing on, the relief sought at the Final Hearing and the relief granted herein is necessary or required.

I.  **Consent by Prepetition Secured Parties**.  The Prepetition Agent consents to the Debtors' use of Cash Collateral in accordance with and subject to the terms and conditions provided for in this Final Order.

J.  **Jurisdiction and Venue**.  Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. § 157(b)(2).  The Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §1334. Venue for these Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

K.     **Relief Essential; Best Interest**.  The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2), 6003, and 6004, Bankruptcy Local Rule 4001-1, and the Complex Case Procedures.  The relief requested in the Motion (and as provided in this Final Order) is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and the property of their estates.  It is in the best interest of the Debtors' estates that the Debtors be allowed to use Cash Collateral under the terms hereof.  The Debtors have demonstrated good and sufficient cause for the relief granted herein.

L.     **Arm's-Length, Good-Faith Negotiations**.  The terms of this Final Order were negotiated in good-faith and at arm's-length between the Debtors and the Prepetition Secured Parties.  Pursuant to Bankruptcy Code sections 105, 361, and 363, the Prepetition Secured Parties are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Final Order, and each is entitled to the protection provided under Bankruptcy Code section 363(m).

**NOW, THEREFORE, UPON THE RECORD OF THE PROCEEDINGS HERETOFORE HELD BEFORE THE COURT WITH RESPECT TO THE MOTION, THE EVIDENCE ADDUCED AT THE INTERIM HEARING AND THE FINAL HEARING, AND THE STATEMENTS OF COUNSEL THEREAT, IT IS HEREBY ORDERED THAT:**

1.     **Motion Granted**. The Motion is granted in accordance with the terms of this Final Order.  Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled and all reservations of rights included therein, are hereby denied and overruled.

2.      **Authorization to Use Cash Collateral**.  Subject to the terms and conditions of this Final Order, the Court hereby authorizes the Debtors to use Cash Collateral during the period beginning with the Petition Date and ending on the Termination Date (as defined herein) (such period, the "**Budget Period**"), in accordance with the 13-week rolling operating budget (which budget shall include a 13-week forecast of (a) cash flow projections covering proposed fundings, investments, and other cash receipts and (b) disbursements for the Debtors) attached as **Exhibit A** to the Interim Order (as such budget may be modified from time to time by the Debtors with the prior written consent of the Prepetition Agent, which consent shall not be unreasonably delayed, as set forth in this paragraph and in paragraph 3(f)(iv) of this Final Order, the "**Budget**"), and for no other purposes.  Notwithstanding the Budget, so long as the Termination Date has not occurred, the Debtors shall be authorized to use Cash Collateral in accordance with this Final Order in an amount that would not cause the Debtors to use Cash Collateral for actual expenditures and disbursements of the Debtors for the line items labeled "Total Operating Disbursements" or "CapEx" in an amount greater than 110% of the amount set forth in the Budget for each such line item (the "**Permitted Deviations**").  The Prepetition Agent may, in its sole discretion, agree in writing to the use of Cash Collateral (i) in a manner or amount which does not conform to the Budget (including Permitted Deviations) (each such approved non-conforming use of Cash Collateral, a "**Non-Conforming Use**") or (ii) for the period following the extension of the Expiration Date (as defined herein) pursuant to paragraph 9 of this Final Order (such period, the "**Subsequent Budget Period**").  If such written consent is given, the Debtors shall be authorized pursuant to this Final Order to expend Cash Collateral for any such Non-Conforming Use or any such Subsequent Budget Period in accordance with a subsequent Budget (a "**Subsequent**

**Budget**") without further Court approval, and the Prepetition Secured Parties shall be entitled to all of the protections specified in this Final Order for any such use of Cash Collateral.

      3.    **Adequate Protection**.  In addition to all the existing security interests and liens granted to or for the benefit of the Prepetition Secured Parties in and with respect to the Prepetition Collateral, including Cash Collateral, as adequate protection for, and to secure payment of an amount equal to any Collateral Diminution (as defined herein), and as an inducement to the Prepetition Secured Parties to permit the Debtors' use of Cash Collateral as provided for in this Final Order:

    (a)    **Adequate Protection Liens**. Effective as of the Petition Date and in each case perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the Debtors hereby grant the following security interests and liens to the Prepetition Agent, for the benefit of the Prepetition Secured Parties, (all property identified in clauses (i) and (ii) of this paragraph 3(a) being collectively referred to as the "**Collateral**"), subject only to the Carve Out (as defined herein) (all such liens and security interests, the "**Adequate Protection Liens**"):

    i.    **Liens Senior to Other Liens**. A valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in, and lien on, the Prepetition Collateral and all other of the Debtors' now owned and hereafter-acquired real and personal property, assets and rights of any kind or nature, wherever located, including, without limitation, all prepetition and postpetition property of the Debtors' estates, and the proceeds, products, offspring, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, oil and gas properties (and as-extracted collateral, goods, fixtures and hydrocarbons relating thereto), accounts receivable, other rights to payment, cash, inventory, general intangibles, contracts, servicing rights, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, claims and causes of action (including those

arising under section 549 of the Bankruptcy Code) and all proceeds, products, offspring, rents and profits of the foregoing, other than causes of action arising under the Bankruptcy Code (including all Avoidance Actions) and the proceeds thereof, which Adequate Protection Liens shall have recourse to the proceeds or property recovered in respect of any Avoidance Actions. The Adequate Protection Liens shall be senior in priority to any other security interests or liens, subject only to (A) the Carve Out, (B) valid, perfected and enforceable prepetition liens and security interests (if any) which are senior in priority to the Prepetition Secured Parties' liens or security interests as of the Petition Date and (C) valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

ii. **Liens Junior to Existing Liens**. A valid, binding, continuing, enforceable, fully-perfected junior-priority lien on and security interest in all prepetition and postpetition property of the Debtors (other than the property described in clause (i) of this paragraph 3(a)), whether now existing or hereafter acquired, that is subject to (A) the Carve Out, (B) valid, perfected and unavoidable liens in existence immediately prior to the Petition Date, and (C) valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(b) **Adequate Protection Claims**. The Debtors hereby grant to the Prepetition Agent, for the benefit of the Prepetition Secured Parties, an allowed superpriority administrative expense claim against each of the Debtors on a joint and several basis with priority over any and all other administrative claims against the Debtors now existing or hereafter arising in these Chapter 11 Cases (subject only to the Carve Out (as defined herein)), including all claims of the kind specified under sections 503(b) and 507(b) of the Bankruptcy Code (the "**Adequate Protection Claims**"), which administrative expense claims shall have recourse to and be payable from all prepetition and postpetition property of the Debtors including, without limitation, the proceeds or property recovered in respect of any Avoidance Actions.

(c) **Adequate Protection Payments**. The Debtors are authorized and directed to pay to the Prepetition Agent, for the ratable benefit of the Prepetition Secured Parties, adequate protection payments on the last business day of each calendar month after the entry of the

Interim Order, in each case, in an amount equal to all accrued and unpaid prepetition and postpetition interest, fees and costs due and payable under the Prepetition Credit Agreement (including, without limitation, breakage costs and accrued fees owing to the Prepetition Agent and any other Prepetition Secured Party), and, in each case, such payments shall be paid in cash (i) for any Eurodollar Borrowing as of the Petition Date, at the LIBO Rate plus the Applicable Margin from the Petition Date until the date on which such Eurodollar Borrowing is converted to an ABR Borrowing and (ii) at the Alternate Base Rate plus the Applicable Margin on and from (A) in the case of ABR Borrowings as of the Petition Date, the Petition Date, and (B) in the case of Eurodollar Borrowings as of the Petition Date, immediately following the conversion of such Eurodollar Borrowings to ABR Borrowings (in accordance with, and as defined in, the Prepetition Credit Agreement); *provided*, *however*, that the Prepetition Agent and the other Prepetition Secured Parties reserve all rights to seek cash payment of additional interest from and after the Petition Date on the Prepetition Indebtedness at the post-default rate of two percent (2%) as provided in Section 3.02(c) of the Prepetition Credit Agreement in the event that the Restructuring Support Agreement (as defined below) is terminated.

(d)     **Other Covenants**. The Debtors shall:

i.      maintain their cash management arrangements in a manner consistent with the *Order (I) Authorizing Continued Use of Existing Cash Management System, Including Maintenance of Existing Bank Accounts, Checks, and Business Forms, (II) Authorizing Continuation of Existing Deposit Practices, (III) Approving the Continuation of Intercompany Transactions, and (IV) Granting Administrative Expense Status to Certain Postpetition Intercompany Claims* [Docket No. 74] entered on October 1, 2020;

ii.     not use, sell or lease any material assets valued in excess of $500,000 in the aggregate outside the ordinary course of business, or seek authority of the Court to do any of the foregoing, without the prior written consent of the Prepetition Agent;

iii.    comply with the covenants contained in Sections 8.06 and 8.07 of the Prepetition Credit Agreement regarding the maintenance and insurance of the Prepetition Collateral and the Collateral; and

iv.     provide draft copies of all orders, motions or applications related to the Transaction (as defined in the Restructuring

Support Agreement) any Debtor intends to file with the Bankruptcy Court to the Prepetition Agent's counsel, if reasonably practicable, at least two (2) business days prior to the date when the applicable Debtor intends to file any such motion or application (provided that if delivery of such motions, orders, or applications at least two (2) business days in advance is not reasonably practicable prior to filing, such motion, order, or application shall be delivered as soon as reasonably practicable prior to filing), and consult in good faith with the Prepetition Agent's counsel regarding, and consider in good faith any changes proposed by the Prepetition Agent's counsel with respect to, the form and substance of any such proposed filing with the Bankruptcy Court.

(e)     **Fees and Expenses**. As additional adequate protection, the Debtors shall pay indefeasibly in cash:

i.      to the extent not already paid as required by the Interim Order, the reasonable and documented professional fees, expenses and disbursements (including, but not limited to, the fees, expenses and disbursements of counsel and other consultants, including financial consultants and auditors) incurred by the Prepetition Agent under the Prepetition Credit Agreement and the other Prepetition Loan Documents arising prior to the Petition Date; and

ii.     the reasonable and documented professional fees, expenses and disbursements (including, but not limited to, the fees, expenses and disbursements of counsel, and other consultants, including financial consultants and auditors) incurred by the Prepetition Agent under the Prepetition Credit Agreement and the other Prepetition Loan Documents arising subsequent to the Petition Date.  The payment of the fees, expenses and disbursements set forth in this paragraph 3(e)(ii) of this Final Order (including, without limitation, the reasonable and documented professional fees and expenses of Linklaters LLP, Opportune LLP, Bracewell LLP, and any other professionals or advisors retained by or on behalf of the Prepetition Agent) shall be made within ten (10) business days after the receipt by the Debtors, any statutory committee appointed in these Chapter 11 Cases, and the U.S. Trustee (the "**Review Period**") of summary invoices thereof (the "**Invoiced Fees**") (each professional shall provide summary copies of its invoices which shall not be required to contain individual time detail and which may be redacted or modified to the extent necessary to delete any information

subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provisions of their invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) and without the necessity of filing formal fee applications, including such amounts arising before and after the Petition Date; *provided*, *however*, that the Debtors, any statutory committee appointed in these Chapter 11 Cases, and the U.S. Trustee may preserve their right to dispute the payment of any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") if, within the Review Period, (a) the Debtors pay in full the Invoiced Fees, including the Disputed Invoiced Fees, and (b) the Debtors, any statutory committee appointed in these Chapter 11 Cases, or the U.S. Trustee file with the Court a motion or other pleading, on at least ten (10) days prior written notice to the Prepetition Agent of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees.  Copies of the summary invoices delivered to the Debtors, any statutory committee appointed in these Chapter 11 Cases, and U.S. Trustee pursuant to this paragraph 3(e)(ii) shall be contemporaneously provided to counsel to the Ad Hoc Noteholders Group.

(f)     **Reporting**.  As additional adequate protection to the Prepetition Secured Parties, the Debtors shall comply with all reporting requirements set forth in the Prepetition Credit Agreement (including the timely provision of Engineering Reports pursuant to Section 2.07(c) of the Prepetition Credit Agreement and Reserve Reports pursuant to Section 8.12 thereof) and shall provide the following additional reporting to the Prepetition Agent:

i.     Weekly (or more or less frequently as may be agreed to between the Debtors and the Prepetition Agent) calls with the Prepetition Agent and its advisors;

ii.     Each update of the Debtors' business plan promptly following its approval by the Debtors' board of directors together with a reconciliation to the prior business plan;

iii.     Promptly, but in any event no later than 5:00 p.m. (Central Time) the tenth (10th) day of each calendar month, a report as of the last day of the preceding calendar month, in form and detail acceptable to the Prepetition Agent, of (A) the Debtors' accounts payable and (B) all written demands or claims related to or asserting any liens in respect of property

or assets of Lonestar or any other Loan Party (including liens imposed by law, such as landlord's, vendors', suppliers', carriers', warehousemen's, repairmen's, construction contractors', workers' and mechanics' liens and other similar liens) if the amount demanded or claimed (1) on account of prepetition and postpetition liens exceeds $2,000,000 in the aggregate at any one time and (2) on account of postpetition liens exceeds $100,000 in the aggregate at any one time, and in each case such amounts are not being paid in the ordinary course of the Debtors' business;

iv.    By 5:00 p.m. (Central Time) on or before Wednesday of each calendar week (A) a 13-week cash flow forecast, substantially in the form and level of detail in the Budget, of the Debtors and their subsidiaries (each, a "**Proposed Budget**"), which Proposed Budget, upon written approval by the Prepetition Agent, shall become the Budget effective as of the first day of the following calendar week; and (B) (1) a weekly report of receipts, disbursements and a reconciliation of actual expenditures and disbursements with those set forth in the Budget for the prior week, on a line by line basis showing any percentage and dollar variance to the proposed corresponding line item of the Budget on a weekly and on a cumulative basis, which report and reconciliation shall be in form and substance satisfactory to the Prepetition Agent, (2) an accounts payable aging report through Friday of the previous week, and (3) a statement setting forth in reasonable detail the cash balance for each deposit account of the Debtors and their subsidiaries as of the previous Friday;

v.    Promptly, and in any event no later than 5:00 p.m. (Central Time) on the twenty-first (21st) day of each calendar month, beginning with the year to date period ended August 31, 2020, a monthly and year-to-date income statement, balance sheet, monthly and year-to-date detail of capital expenditures and workovers;

vi.    A list of all Postpetition Hedge Agreements (as defined in the Hedging Order (as defined herein)) of the Debtors in place as of the first business day of the month, to be provided by the tenth (10th) business day of such month, which list contains the material terms thereof (including type, term, effective date, termination date and notional amounts or volumes and volumes), the net mark-to-market value therefor and the counterparty to each such agreement, and

information on any Postpetition Hedge Agreement terminated or unwound within one (1) business day after such Postpetition Hedge Agreement is terminated or unwound;

vii. Within two (2) business days of receipt, a copy of any written offer, proposal, term sheet, or any other indication of interest received by the Debtors for the purchase of any Oil and Gas Properties (other than Hydrocarbons in the ordinary course of business) (each as defined in the Prepetition Credit Agreement) or any other assets of the Debtors of more than *de minimis* value;

viii. All written reports provided to the Ad Hoc Noteholders Group, the U.S. Trustee, or any other party in interest in these Chapter 11 Cases promptly after providing the reports to such party; and

ix. Such other reports, presentations, and information as the Prepetition Agent may reasonably request, in form and substance satisfactory to the Prepetition Agent.

All reports delivered to the Prepetition Agent or the other Prepetition Secured Parties under this Final Order shall be contemporaneously provided to counsel to the Ad Hoc Noteholders Group.

(g) **Postpetition Hedge Agreements**.  The Debtors shall not (i) change the material terms of any Postpetition Hedge Agreement, (ii) terminate or unwind any Postpetition Hedge Agreement, or (iii) create any off-setting positions in respect of any hedge positions under any such Postpetition Hedge Agreement (whether evidenced by a floor, put or Postpetition Hedge Agreement), or seek authority of the Court to do any of the foregoing, without the prior written consent of the Prepetition Agent.  If any Debtor receives cash proceeds as a result of any change to the material terms of any Postpetition Hedge Agreement, any termination or unwinding of any Postpetition Hedge Agreement, or creation of any off-setting positions in respect of any hedge positions under any Postpetition Hedge Agreement (whether evidenced by a floor, put or Postpetition Hedge Agreement), then the Debtors shall submit such cash proceeds within one (1) business day following receipt thereof to the Prepetition Agent, which cash proceeds shall constitute Cash Collateral and be deposited into the Hedge Proceeds Account to be used in accordance with this Final Order; *provided*, *however*, any monthly or other scheduled payments to the Debtors under any Postpetition Hedge Agreements that have not been terminated shall

(A) constitute Cash Collateral, (B) be used by the Debtors in accordance with this Final Order, and (C) not be required to be deposited in the Hedge Proceeds Account.

(h)     **Asset Sales; Application of Proceeds**.  Unless otherwise agreed to by the Prepetition Agent in writing, all sales, transfers, exchanges and other dispositions (including casualty and condemnation events) of Collateral shall be in exchange for 100% cash consideration, 100% of the net proceeds of which shall (i) constitute Cash Collateral, (ii) be used by the Debtors in accordance with this Final Order, and (iii) other than to the extent received from the sale of Hydrocarbons (as defined in the Prepetition Credit Agreement) in the ordinary course of business, be deposited into the Hedge Proceeds Account.

4.     **Collateral Diminution**.  For purposes of this Final Order, "**Collateral Diminution**" shall mean an amount equal to the decrease in the value of the Prepetition Collateral (including Cash Collateral) from and after the Petition Date resulting from the use, sale, or lease of such Prepetition Collateral, including Cash Collateral, whether in accordance with the terms and conditions of the Interim Order, this Final Order, or otherwise, or the imposition of the automatic stay.

5.     **Priority of Adequate Protection Liens and Adequate Protection Claims**.  Except to the extent of the Carve Out, the Adequate Protection Liens and Adequate Protection Claims granted to the Prepetition Secured Parties pursuant to paragraph 3 of this Final Order shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under section 364 of the Bankruptcy Code or otherwise; *provided* that the Debtors shall not create, incur or suffer to exist any liens or security interests other than: (a) those granted pursuant to this Final Order, (b) those granted pursuant to the *Order (I) Authorizing the Debtors to Enter Into and Perform Under Postpetition Hedge Agreements, (II) Granting Adequate Protection Liens and*

*Adequate Protection Claims, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 81] (the "**Hedging Order**"), and (c) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens (i) having a value of less than $2,000,000 on account of prepetition and postpetition liens in the aggregate at any one time and (ii) having a value of less than $100,000 on account of postpetition liens in the aggregate at any one time, in each case excluding any such lien for which the underlying claim is paid in the ordinary course of the Debtors' business and does not have any past due amounts.

6.     **Carve Out**.  As used in this Final Order, "**Carve Out**" means the sum of: (a) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus statutory interest, if any, pursuant to 31 U.S.C. § 3717; plus (b) fees and expenses up to $75,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; plus (c) all allowed unpaid fees and expenses (whether allowed before or after the delivery of a Carve Out Notice (as defined herein), and whether allowed by interim order, procedural order, or otherwise) incurred by persons or firms retained by the Debtors in these Chapter 11 Cases pursuant to sections 327, 328, 330, 331 or 363 of the Bankruptcy Code (any such persons or firms, collectively, the "**Professionals**") at any time before the first business day following delivery by the Prepetition Agent (via electronic mail, overnight delivery or hand delivery) to Lonestar's Chief Financial Officer, counsel to the Debtors, any statutory committee appointed in these Chapter 11 Cases, and the U.S. Trustee of a written notice (the "**Carve Out Notice**"), which notice may be delivered at any time following the occurrence of the Termination Date or a Termination Event (each as defined herein) stating that the Termination Date has occurred or a Termination Event has occurred; and (d) the allowed fees and expenses (whether allowed by interim order, procedural order, or otherwise) of the Professionals in an aggregate

amount not to exceed $1,250,000 (the "**Post-Carve Out Notice Cap**") incurred after the first business day following delivery by the Prepetition Agent of the Carve Out Notice as set forth above; *provided* that (i) the Carve Out shall not be available to pay the fees or expenses of any Professional incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Prepetition Agent or the other Prepetition Secured Parties; (ii) the Carve Out shall not be reduced by the payment of fees and expenses of the Professionals incurred prior to the delivery date of a Carve Out Notice and allowed at any time by the Court and payable under sections 327, 328, 330, 331 or 363 of the Bankruptcy Code; and (iii) without prejudice to the rights of the Professionals or the Debtors to contest any such objection, nothing in this Final Order shall be construed to impair the ability of any party to object to any fees, expenses, reimbursements or compensation sought by any Professional.

7.    **Postpetition Lien Perfection**.    Without the necessity of the filing of financing statements, security agreements, federal or state notices, pledge agreements, intellectual property filings, deeds of trust, recordings, mortgages or other documents or instruments or taking possession or control of any Collateral, this Final Order shall be sufficient evidence of the Prepetition Secured Parties' perfected security interests and liens granted in the Collateral pursuant to this Final Order.  Notwithstanding the foregoing, the Debtors are authorized to, and shall, upon request of the Prepetition Agent, execute such documents including, without limitation, mortgages, pledges and financing statements and use Cash Collateral to pay such costs and expenses as may be reasonably requested by the Prepetition Agent to provide further evidence of the perfection of the Prepetition Secured Parties' security interests and liens in the Collateral as provided for herein. The Prepetition Agent is hereby authorized, but not required, to file or record such documents in any jurisdiction in order to validate the liens and security interests granted to the Prepetition Agent,

for the benefit of the Prepetition Secured Parties under this Final Order, and the automatic stay shall be modified to allow such filings.  A certified copy of this Final Order may, in the discretion of the Prepetition Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, security agreements, federal or state notices, pledge agreements, intellectual property filings, deeds of trust, recordings, mortgages, or other documents or instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording.  All such documents described in this paragraph shall be deemed to have been recorded and filed as of the Petition Date notwithstanding the date of any such recording or filing.

8.      **Inspection Rights**.  In addition to, and without limiting, whatever rights to access the Prepetition Secured Parties and any other professionals or advisors retained by or on behalf of the Prepetition Secured Parties have under their respective Prepetition Loan Documents, upon reasonable notice during normal business hours, the Debtors shall permit representatives, agents and employees of the Prepetition Secured Parties, including, without limitation, any other professionals or advisors retained by or on behalf of any of the Prepetition Secured Parties, to (a) have access to and inspect and copy the Debtors' books and records, including all records and files of the Debtors pertaining to the Prepetition Collateral, (b) have access to and inspect the Debtors' properties, and (c) discuss the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors.  The members of the Ad Hoc Noteholders Group and the professionals or advisors retained by or on behalf of the Ad Hoc Noteholders Group shall be afforded the same inspection and access rights as provided to the Prepetition Secured Parties pursuant to this paragraph 8.

9.      **Termination**. The Debtors' right to use Cash Collateral pursuant to this Final Order shall terminate (the date of any such termination, the "**Termination Date**") without further notice or court proceeding on the earliest to occur of: (x) December 1, 2020 (the "**Expiration Date**"); *provided* that, with the consent of the Debtors and the Prepetition Agent, in the exercise of their respective sole discretion, the Expiration Date may be extended without further Court approval upon the filing of a notice on the docket of these Chapter 11 Cases setting forth the new Expiration Date; (y) the occurrence of any of the events set forth in subparagraphs (a), (b), (c), (d), (h), (i), (j), (k), (l) or (m) below; and (z) five (5) business days following the delivery of written notice (any such notice, a "**Default Notice**") by the Prepetition Agent to the Debtors, counsel to the Debtors, and the U.S. Trustee (any such five-business-day period of time, the "**Default Notice Period**") of the occurrence and continuation of any of the events set forth in subparagraphs (e), (f), or (g) unless such occurrence and continuation is (i) cured by the Debtors prior to the expiration of the Default Notice Period with respect to such subparagraph, or (ii) waived by the Prepetition Agent in its sole discretion; *provided* that, during the Default Notice Period, the Debtors shall be entitled to continue to use Cash Collateral in accordance with the terms of this Final Order:

      (a)      The entry of an order or the filing of a motion by any of the Debtors seeking entry of an order dismissing these Chapter 11 Cases or converting these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code;

      (b)      The entry of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the Prepetition Agent or the other Prepetition Secured Parties with respect to the Prepetition Collateral or the Collateral having an aggregate value in excess of $2,000,000 without the written consent of the Prepetition Agent, which consent may be withheld in its sole discretion;

      (c)      The appointment or election of, or the filing of a motion by any of the Debtors seeking the appointment or election of, a trustee,

examiner with expanded powers, or any other representative with expanded powers relating to the operation of the businesses in these Chapter 11 Cases;

(d)     The occurrence of the effective date or consummation date of a plan of reorganization for the Debtors;

(e)     The failure by the Debtors to make any payment required pursuant to this Final Order when due;

(f)     The failure by the Debtors to deliver to the Prepetition Agent any of the documents or other information required to be delivered pursuant to this Final Order when due or any such documents or other information shall contain a material misrepresentation;

(g)     The failure by the Debtors to adhere to the Budget or Subsequent Budget, as applicable, except, in each instance, with respect to Permitted Deviations or Non-Conforming Uses;

(h)     The Debtors shall create, incur or suffer to exist any prepetition or postpetition liens or security interests other than: (i) those granted pursuant to this Final Order; (ii) those granted pursuant to the Hedging Order; and (iii) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business (A) having a value of less than $2,000,000 on account of prepetition and postpetition liens in the aggregate at any one time and (B) having a value of less than $100,000 on account of postpetition liens in the aggregate at any one time, in each case excluding any such lien for which the underlying claim is paid in the ordinary course of the Debtors' business and does not have any past due amounts;

(i)     The Debtors shall create, incur or suffer any other claim which is *pari passu* with or senior to the Adequate Protection Claims (other than those granted pursuant to the Hedging Order);

(j)     The filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the amount, validity, enforceability, perfection or priority of the liens securing the Prepetition Indebtedness or asserting any other cause of action against and/or with respect to the Prepetition Indebtedness, the Prepetition Collateral securing the Prepetition Indebtedness or any of the Prepetition Secured Parties (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party);

(k)     The sale or transfer of any material assets of any Debtor, or the filing of a motion by any of the Debtors seeking approval of the sale or

transfer of any material assets of any Debtor other than in the ordinary course of business or in accordance with paragraphs 3(d) and 3(h) of this Final Order;

(l)     The termination of the Restructuring Support Agreement, dated as of September 14, 2020 (the "**Restructuring Support Agreement**") pursuant to its terms; or

(m)     The entry of an order or the filing of a motion by any of the Debtors seeking entry of an order reversing, staying, vacating or otherwise modifying in any material respect the terms of this Final Order, without the consent of the Prepetition Agent.

Each of subparagraphs (a) through (m) is referred to herein as a "**Termination Event**."  Following the occurrence of a Termination Event, the Prepetition Agent may file a motion (the "**Stay Relief Motion**") seeking emergency relief from the automatic stay on at least five (5) business days' notice to request a further order of the Court, which may fashion an appropriate remedy upon a determination that a Termination Event occurred, including permitting the Prepetition Agent to proceed to protect, enforce and exercise all rights and remedies available under the Prepetition Loan Documents, this Final Order, the Hedging Order, or applicable law, including, but not limited to, pursuing suit in equity, action at law or other appropriate proceeding, foreclosing upon and selling all or a portion of the Prepetition Collateral or Collateral in order to collect any amounts payable to the Prepetition Secured Parties pursuant to this Final Order and the Postpetition Hedging Lenders as defined in and pursuant to the Hedging Order and apply the same to such obligations.  The automatic stay under section 362 of the Bankruptcy Code shall be deemed modified and vacated to the extent necessary to permit such actions if so ordered by further order of the Court.  The Debtors shall not object to the fact that the Stay Relief Motion is being heard on such shortened notice.  Until such time that the Stay Relief Motion has been adjudicated by the Court, the Debtors may use Cash Collateral to fund operations in accordance with this Final Order. Any delay or failure of any of the Prepetition Secured Parties to exercise rights under any

Prepetition Loan Document or this Final Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise. Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Prepetition Secured Parties under this Final Order shall survive the Termination Date.

10. **Limitation on Charging Expenses Against Collateral**. All rights to surcharge any Prepetition Collateral or Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in these Chapter 11 Cases.

11. **Payments Free and Clear**. Subject to paragraph 3(e)(ii) of this Final Order, all payments or proceeds remitted to the Prepetition Agent for itself or on behalf of any other Prepetition Secured Party pursuant to the provisions of the Interim Order, this Final Order or any subsequent order of the Court shall be irrevocable and indefeasible, received free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

12. **Reservation of Rights of the Prepetition Secured Parties**. This Final Order and the transactions contemplated hereby shall be without prejudice to (a) the rights of the Prepetition Secured Parties to seek additional or different adequate protection, move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert these Chapter 11 Cases, or to take any other action in these Chapter 11 Cases and to appear and be heard in any matter raised in these Chapter 11 Cases and (b) any and all rights, remedies, claims and causes of action which the Prepetition Secured Parties may have against any non-Debtor party

liable for the Prepetition Indebtedness.  For all purposes throughout these Chapter 11 Cases, the Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection as of the Petition Date.  For the avoidance of doubt, such request shall survive termination of this Final Order.

13.    **Modification of Automatic Stay**.  The Debtors are authorized to, and upon request of the Prepetition Agent, shall perform all acts and make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Final Order and the transactions contemplated hereby.  The automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtors and each of the Prepetition Secured Parties to perform the transactions and actions contemplated or permitted by this Final Order.

14.    **Binding Effect**.  The terms and provisions of this Final Order shall be valid and binding upon, and inure to the benefit of the Prepetition Secured Parties to the extent and as set forth herein, the Debtors, all creditors of the Debtors, all other parties in interest, and all of their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereafter appointed or elected for the estate of any of the Debtors, any examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) from and after the entry of this Final Order.  The terms and provisions of this Final Order, as well as the priorities in payments, liens, and security interests granted pursuant to this Final Order shall bind any trustee hereafter appointed for the estate of any of the Debtors, whether in these Chapter 11 Cases or in the event of conversion of any of these Chapter 11 Cases to a liquidation under chapter 7 of the Bankruptcy Code and shall survive any such conversion, confirmation or consummation of any

plan(s) of reorganization or liquidation, or dismissal of these Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise.  Such binding effect is an integral part of this Final Order.

15.     **Reversal, Stay, Modification or Vacatur**.  Notwithstanding any reversal, stay, modification or vacatur of this Final Order, any indebtedness, obligation or liability incurred by the Debtors pursuant to this Final Order arising prior to the Prepetition Agent's receipt of notice of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Final Order, and the Prepetition Secured Parties shall continue to be entitled to all of the rights, remedies, privileges and benefits, including any payments authorized herein and the security interests and liens granted herein, with respect to such indebtedness, obligation or liability, and the validity of any payments made or obligations owed or credit extended or lien or security interest granted pursuant to this Final Order is and shall remain subject to the protections afforded under the Bankruptcy Code.  In the event the provisions of this Final Order are reserved, stayed, modified or vacated following any further hearing, such reversals, modifications, stays or vacatur shall not affect the rights and priorities of the Prepetition Secured Parties granted pursuant to this Final Order.

16.     **Adequate Protection Payments**.  The adequate protection payments made pursuant to the Interim Order or this Final Order to the Prepetition Secured Parties, including, without limitation, payments of interest, fees and expenses, shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in these Chapter 11 Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

17.     **No Liability to Third Parties**.  None of the Prepetition Agent or the other Prepetition Secured Parties shall owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates, and, none of the Prepetition Agent or the other Prepetition Secured Parties

shall be deemed to be: (a) in "control" of the operations of the Debtors, or (b) acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act of 1980 or any similar federal or state statute).

18. **Reservation of Certain Third Party Rights and Bar of Challenge and Claims**. The Debtors' admissions, stipulations and releases contained in paragraphs C, D, E, and F of this Final Order shall be binding on: (a) the Debtors for all purposes; and (b) all other parties in interest, including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors, for all purposes unless (i) a party with requisite standing (subject in all respects to any agreement or applicable law which may limit or affect such parties' right or ability to do so) has properly filed an adversary proceeding or contested matter by no later than the date that is (A) in the case of any party in interest other than a statutory committee appointed within thirty (30) days of the Petition Date, the earlier of (1) November 15, 2020, and (2) the Final Hearing (the earlier of such date, the "**Challenge Deadline**"), unless a later date has been ordered by the Court for cause upon a motion filed and served prior to the expiration of the Challenge Deadline, or has been agreed to, in writing, by the Prepetition Agent; *provided,* that if, prior to the expiration of the Challenge Deadline, any chapter 7 or chapter 11 trustee is appointed or elected, the Challenge Deadline shall be extended for a period of sixty (60) days from the date of such appointment or election solely with respect to such trustee; or (B) in the case of any statutory committee appointed within thirty (30) days of the Petition Date, the earlier of (1) thirty (30) days from such appointment or (2) the first day of a hearing to consider confirmation of a chapter 11 plan in any of the Chapter 11 Cases, (1) objecting to or challenging the amount, validity,

enforceability, priority or extent of the Prepetition Indebtedness or security interests in and liens on the Prepetition Collateral of the Prepetition Secured Parties, or (2) otherwise asserting any claims or causes of action against the Prepetition Secured Parties on behalf of the Debtors' estates, and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is properly filed as of the Challenge Deadline or the Court does not rule in favor of the plaintiff in any such proceeding (which ruling on standing, if appealed, shall not stay or otherwise delay these Chapter 11 Cases or confirmation of any plan of reorganization), then: (A) the Debtors' admissions, stipulations and releases contained in paragraphs C, D, E, and F of this Final Order shall be binding on all parties in interest; (B) the obligations of the Debtors under the Prepetition Loan Documents shall constitute allowed claims for all purposes in these Chapter 11 Cases and any subsequent chapter 7 cases; (C) the Prepetition Secured Parties' security interests in and liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected first priority security interests and liens, not subject to recharacterization, subordination or otherwise avoidable; and (D) the Prepetition Indebtedness and security interests in and liens on the Prepetition Collateral of the Prepetition Secured Parties shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto. If any such adversary proceeding or contested matter is properly filed as of the Challenge Deadline, the Debtors' admissions, stipulations and releases contained in paragraphs C, D, E, and F of this Final Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) except to the extent that such admissions, stipulations and releases were expressly challenged in such adversary proceeding or contested matter. Nothing contained in this Final Order shall be

deemed to grant standing to any party to commence any such adversary proceeding or contested matter.

19. **Limitation on Use of Cash Collateral**.  The Debtors shall use Cash Collateral on a consensual basis solely as provided in this Final Order.  Notwithstanding anything herein or in any other order of the Court to the contrary, no Cash Collateral may be used to: (a) initiate, litigate, object, contest, or raise any defense to the amount, validity, perfection, priority, extent, or enforceability of the Prepetition Indebtedness, the liens or claims granted under this Final Order, or the Prepetition Loan Documents, (b) initiate, litigate, assert any claims, defenses or causes of action against the Prepetition Agent, the other Prepetition Secured Parties, or their respective agents, affiliates, representatives, attorneys, or advisors, (c) seek to modify any of the rights granted to the Prepetition Agent or the other Prepetition Secured Parties in this Final Order or the Prepetition Loan Documents without the Prepetition Agent's consent, (d) prevent, hinder or otherwise delay the Prepetition Agent's assertion, enforcement, or realization on the Prepetition Collateral or the Collateral in accordance with the Prepetition Loan Documents or this Final Order, or (e) pay any amount on account of claims arising prior to the Petition Date unless such payments are approved by an order of the Court and are in accordance with the Budget (including Permitted Deviations).

20. **Enforceability; Waiver of Any Applicable Stay**.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 6004, 7062 or 9014 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Final Order.

21.     **No Impact on Certain Contracts or Transactions.**  No rights of any entity in connection with a contract or transaction of the kind listed in sections 555, 556, 559, 560 and 561 of the Bankruptcy Code, whatever they might or might not be, are affected by the provisions of this Final Order.

22.     **Right to Credit Bid**.  To the extent permitted by section 363(k) of the Bankruptcy Code, the Prepetition Agent and the other Prepetition Secured Parties, respectively, shall have the right to credit bid under section 363(k) of the Bankruptcy Code all of their respective claims in connection with a sale of the Debtors' assets under section 363 of the Bankruptcy Code or under a chapter 11 plan or otherwise.

23.     **Proofs of Claim**.  Neither the Prepetition Agent nor any of the other Prepetition Secured Parties will be required to file proofs of claim in any of these Chapter 11 Cases or successor cases, and the Debtors' admissions and stipulations in paragraphs C, D, and E herein shall be deemed to constitute a timely filed proof of claim against the applicable Debtors.

24.     **Section 552(b) of the Bankruptcy Code**.  The Prepetition Agent and the other Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Agent and the other Prepetition Secured Parties with respect to proceeds, products, offspring, rents and profits of any of the Prepetition Collateral or the Collateral.

25.     **No Marshaling**.  Neither the Prepetition Agent nor the other Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or the Collateral, as applicable.

26.     **Interim Order**.  Except as specifically amended or otherwise modified hereby, all of the provisions of the Interim Order and any actions taken by the Debtors or the Prepetition Secured Parties in accordance therewith shall remain in effect and are hereby ratified by this Final Order.

27.     **Headings**.  The headings in this Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Final Order.

28.     **Retention of Jurisdiction**.  The Court has and will retain jurisdiction to enforce this Final Order.

29.     **Tax Liens of the Texas Taxing Authorities**.  Notwithstanding any other provisions included in this Final Order, any statutory liens (collectively, the "**Tax Liens**") of the County of Brazos, Texas, Reeves County Tax District, Texas, the County of Stephens, Texas, Dimmit County, Texas, the Fayette CAD Tax Office, and the Karnes County Tax Office, LaSalle County, Cotulla ISD, Dewitt County, Dilley ISD, Gonzales County, Karnes City ISD, Lavaca County, Orange County, Robertson County, and Wilson County (collectively, the "**Texas Taxing Authorities**") for state or local taxes that under applicable non-bankruptcy law are granted priority over a prior perfected security interest or lien shall not be primed by nor made subordinate to any liens granted to any party hereby to the extent such Tax Liens are valid, senior, perfected, binding, enforceable and non-avoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens (including any Tax Liens) asserted by the Texas Taxing Authorities are fully preserved.

30.     **Liens of the RMO Client Parties**.  Nothing in this Final Order shall be construed to (a) alter, diminish, dilute, terminate, affect or avoid any valid, perfected, binding, enforceable, and non-avoidable liens of G.D. Farrell, Mary F. Farrell, or Moreno Ranch Minerals, Ltd (collectively, the "**RMO Client Parties**") for royalties arising by title, contract, statute, operation of law or otherwise; or (b) prime any valid, senior, perfected, binding, enforceable, and non-avoidable liens in favor of the RMO Client Parties arising by title, contract, statute, operation of law or otherwise that are, under applicable non-bankruptcy law, senior in priority to the Prepetition Secured Parties' liens or security interests as of the Petition Date, and all parties' rights to object to the priority, validity, amount, and extent of the liens of the RMO Client Parties are fully preserved.

**Signed:  November 06, 2020.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**